IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAMELA A. BERG,                    )
                                   )      02:04-cv-2161-GEB-GGH
                 Plaintiff,        )
                                   )
     v.                            )      ORDER[*]
                                   )
CALIFORNIA HORSE RACING BOARD,     )
ROY C. WOOD, JR., ROY MINAMI,      )
                                   )
                 Defendants.       )
                                   )

          Defendants move for summary judgment and/or summary
adjudication on Plaintiff's claims.  Plaintiff opposes the motion.[1]

                           BACKGROUND

          Defendant California Horse Racing Board ("CHRB") is a state
agency responsible for overseeing all wagered horse racing in the
State of California.  Cal. Bus. & Prof. Code § 19420.  The CHRB has

---

          [*]   This motion was determined to be suitable for decision
without oral argument.  L.R. 78-230(h).

          [1]   On November 17, 2005, Plaintiff filed objections to evidence
submitted by Defendants in support of their motion for summary
judgment.  The objections were filed only four days before the
November 21, 2005, hearing on the motion.  Local Rule 78-230 requires
that all opposition to a motion be filed not less than fourteen days
before the hearing date.  Therefore, the objections are not considered
in opposition to the motion for summary judgment because Plaintiff did
not comply with the Local Rule.

all powers necessary and proper to enable it to effectuate its
purpose, including the authority to adopt and enforce rules and
regulations, adjudicate disputes arising from the enforcement of those
rules and regulations, and license individuals involved in horse
racing.  Id. §§ 19440, 19510.  The CHRB has the authority to delegate
its powers and duties to individuals licensed as horse racing Stewards
by the State of California.  Id.  Pursuant to this authority, the CHRB
delegated control over every aspect of a horse racing meet to licensed
Stewards.  4 Cal. Code Reg. § 1527.

Plaintiff Pamela Berg is a licensed Steward.  (Pl.'s
Statement of Undisputed Facts ("PSF") ¶ 4; Berg Decl. ¶ 1.)  Since
1991, Plaintiff has entered year-long contracts with the CHRB to work
as an Associate Steward and Steward.  (PSF ¶ 32; Berg Decl. ¶ 2.)  Her
employment contracts do not contain specific work assignments, i.e.
the contracts do not specify when or where Plaintiff will work, or
whether Plaintiff will work as a Steward or as an Associate Steward.
(Pl.'s Resp. to Defs.' Statement of Undisputed Facts ("SUF") ¶¶ 7, 10,
20; Minami Decl. ¶ 2; Berg Decl. ¶ 6.)  Instead, Defendant Roy Wood,
the former Executive Director of the CHRB, and Defendant Roy Minami,
the Assistant Executor of the CHRB, issued separate assignment sheets
each December for the upcoming year.  (SUF ¶¶ 11; Defs.' Ex. C; Minami
Depo. 35:17-36:3.)  Defendant Minami drafted the assignment sheets
based on the assignments issued the previous year, and Defendant Wood
occasionally made changes before the assignments were issued.
(SUF ¶ 82; Minami Depo. 37:7-14.)  As a result, the assignments
typically did not change from year to year.  (SUF ¶ 80; Defs.' Ex. C;
Berg Depo. 40:2-6.)

In 1997, Plaintiff filed a lawsuit in California Superior Court against the CHRB, Defendant Wood, and other defendants alleging, inter alia, she had been subjected to discriminatory treatment because of her gender. (SUF ¶ 21; Defs.' Ex. 1.)  Specifically, Plaintiff alleged she was primarily given assignments as an Associate Steward, was denied Steward assignments at two particular venues, Golden Gate Fields and Bay Meadows, was excluded from work-related telephone calls, meetings, and social functions, and was refused permission to change her work schedule. (SUF ¶ 21; Defs.' Ex. 1.)  The parties settled this lawsuit in January 1999, and judgment was entered in favor of Plaintiff in the amount of $79,999.99. (SUF ¶ 22; Berg Decl. ¶ 10.)

Shortly thereafter, Plaintiff asserts Defendant Wood told her the judgment would not affect her assignments. (PSF ¶ 64; Berg Decl. ¶ 11.)  Nevertheless, Plaintiff continually requested assignments as a Steward at Golden Gate Fields or Bay Meadows. (PSF ¶ 1; Decl. Berg ¶ 16.)  Plaintiff "never received a positive response" regarding these requests. (PSF ¶ 2; Berg Decl. ¶ 16.)  Instead, Plaintiff continued to receive the same assignments, primarily as an Associate Steward, from 1999 through 2004. (PSF ¶¶ 21, 39; Defs.' Ex. C; Pl.'s Ex. F.)

In addition, Plaintiff asserts that in 1999 she was denied permission to work "dark days," i.e. non-racing days, and was refused other supplemental work. (PSF ¶¶ 44-59; Berg Decl. ¶¶ 13, 19-22.)  In 2001, Plaintiff asserts she was excluded from a Steward meeting, and was removed without cause from an assignment at the Sonoma County Fair. (PSF ¶¶ 85-86; Berg Decl. ¶¶ 30-31.)  In 2002, Plaintiff asserts she was not advised of a conference call among all the

Stewards to discuss a rule amendment.  (PSF ¶ 87; Berg Decl. ¶ 30.)
In October 2003, the position of Associate Steward was suspended for
the remainder of the year due to budget constraints.  (Berg Decl.
¶ 5.)  Plaintiff asserts she was the only Associate Steward affected
because the other Associate Stewards were provided with Steward
assignments.  (Id. ¶ 26.)  However, Plaintiff acknowledges Defendants
offered her Steward assignments at Cal Expo, but she declined the
offer because it would cause her personal hardship.  (PSF ¶ 88-91;
Berg Decl. ¶ 26.)

Plaintiff seeks to recover for the actions of Defendants
after judgment was entered in her 1999 lawsuit.  Plaintiff asserts
federal claims for violations of 42 U.S.C. § 1983 ("§ 1983") and state
claims for violations of the Fair Employment and Housing Act,
California Government Code 12940 et seq., and breach of contract.
Defendants seek summary judgment on all of Plaintiff's claims.

DISCUSSION[1]

I.  § 1983 Claims[2]

"Section 1983 provides for liability against any person
acting under color of law who deprives another 'of any rights,
privileges, or immunities secured by the Constitution and laws' of the
United States."  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,
887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983).  Plaintiff alleges

---

[1]    The standards applicable to motions for summary judgment are
well known and need not be repeated here.

[2]    Although Defendants argue in their Motion for Summary
Judgment that Plaintiff's § 1983 claims should be dismissed because
she failed to exhaust contractual remedies, (Defs.' Mot. at 8),
Defendants' Reply "concede[s] that Plaintiff is not required to
exhaust her contractual remedy for her 42 U.S.C. § 1983 . . . causes
of action," (Defs.' Reply at 2, n.1).

Defendant Wood and Defendant Minami violated § 1983 by (1) denying her right to equal protection under the Fourteenth Amendment, (2) retaliating against her for engaging in speech protected by the First Amendment, and (3) denying her procedural due process under the Fourteenth Amendment.[3]   (Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pls.'s Opp'n") at 7, 19, 38.)

A.   Statute of Limitations

Defendants argue Plaintiff's § 1983 claims are barred in whole or in part by the statute of limitations.  (Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 11.)  Claims brought under § 1983 "are governed by the forum state's statute of limitations for personal injury actions."  Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). Therefore, California's personal injury limitation statute "determines the length of the limitations period."  Id.; Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1174 (E.D. Cal. 2005).  In California, personal injury actions that accrue prior to January 1, 2003, are governed by a one-year statute of limitations.  Krupnick v. Duke Energy Morro Bay, 115 Cal. App. 4th 1026, 1028 (2004) (citing former California Code of Civil Procedure § 340).  However, personal injury actions that accrue on or after January 1, 2003, are governed by a two-year statute of limitations.  Id.  (citing California Code of Civil Procedure § 335.1 and holding that it does not apply retroactively).

Although California state law "determines the length of the limitations period, federal law determines when a civil rights claim

---

[3]      Defendants contend Plaintiff cannot sue Defendants Wood and Minami "in their official capacities . . . ."  (Defs.' Mot. at 15.) However, Plaintiff asserts "Defendants Wood and Minami are not sued in their official capacities, but rather "in their individual capacities arising from their official acts."  (Pl.'s Opp'n at 37.)

accrues." <u>Knox</u>, 260 F.3d at 1013.  Under federal law, "a claim
accrues when the plaintiff knows or has reason to know of the injury
which is the basis of the action." <u>Id.</u>  Plaintiff's § 1983 claims are
premised on the allegations that (1) from 1999 through 2004 she was
given primarily Associate Steward assignments, (2) in 1999 she was
denied permission to dark days, (3) in 1999 she was refused
supplemental work, (3) in 2001 she was excluded from a meeting, (4) in
2001 she was removed from an assignment at the Sonoma County Fair, (4)
in 2002 she was not advised of a conference call, (5) in 2003 she was
denied Steward assignments when the Associate Steward position was
suspended.  (<u>See</u> Pl.'s Opp'n at 23-26, 38-39.)  Since Plaintiff knew
or had reason to know of these events when they happened, a claim for
each act accrued in the year it occurred.  <u>Knox</u>, 260 F.3d at 1013; <u>see
also</u> <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002)
(a "discrete retaliatory or discriminatory act 'occur[s]' on the day
that it happened").  Therefore, all of the events that occurred prior
to January 1, 2003, would appear to be barred by the one-year statute
of limitations.

However, Plaintiff argues that the continuing violation
doctrine "is a viable theory to toll the statute of limitations on her
claim[s] from 1999 to the present." (Pl.'s Opp'n at 34.)  The
continuing violation doctrine allows a plaintiff "to seek relief for
events outside the limitations period." <u>Knox</u>, 260 F.3d at 1013.
Prior to the Supreme Court's decision in <u>Morgan</u>, a plaintiff could
establish a continuing violation by showing "a series of related acts
one or more of which are within the limitations period," or by showing
"a systematic policy or practice of discrimination that operated, in
part, within the limitations period - a systematic violation." <u>See</u>

Morgan, 536 U.S. at 107.  However, in Morgan the Supreme Court invalidated the "related acts" method of proving a continuing violation, stating "discrete acts such as termination, failure to promote, denial of transfer, and refusal to hire are easy to identify . . . and constitute a separate actionable "unlawful employment practice."  Id. at 114.  Therefore, "[d]iscrete discriminatory acts are not actionable if time barred even when they are related to acts alleged in timely filed charges."  Id. at 113.  However, the Supreme Court did not address the  second method of proving a continuing violation, i.e the systematic pattern-or-practice method.  Id. at 115, n.9; Lyons v. England, 307 F.3d 1092, 1106 (9th. Cir. 2002).

Plaintiff argues the "systematic pattern-or-practice method of the continuing violation doctrine" allows her to seek relief for events outside the limitations period.[4]  (Pl.'s Opp'n at 34.) "[P]attern-or-practice claims . . . must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace."  Cherosky v. Henderson, 330 F.3d 1243, 1247 (9th Cir. 2003).  Plaintiff argues the "pattern-or-practice method" applies because she personally "has been subjected to the discriminatory assignments for over a decade."  (Pl.'s Opp'n at 35.) However, "individualized decisions are best characterized as discrete acts, rather than a pattern or practice of discrimination."  Cherosky, 330 F.3d at 1247.  Furthermore, "[t]he allegation that these discrete acts were undertaken pursuant to a discriminatory policy does not

_____

[4]   Although Plaintiff asserts that she is invoking the systematic pattern-or-practice method of proving a continuing violation, Plaintiff cites to the legal standard for the "related acts" method of proving a continuing violation.  (See Pl.'s Opp'n at 35.)

extend the statutory limitations period . . . ."  Id.; Lyons, 307 F.3d
at 1107 (holding "discrete acts [that] flow[] from a company-wide, or
systemic, discriminatory practice . . . [do not establish] liability
for acts occurring outside the limitations period").

Plaintiff also argues the "pattern-or-practice method"
applies because "women were given unfavorable assignments over the men
for many years."  (Pl.'s Opp'n at 35.)  Plaintiff supports this
assertion citing the deposition testimony of Ingrid Fermin, a former
Steward and the current director of the CHRB, who testified that women
received "damaging" assignments in 1994-1995.  (PSF ¶ 82; Fermin Depo.
28:19-25; 104:19-25.)  However, Plaintiff has produced no other
evidence, statistical or otherwise, from which a reasonable inference
could be drawn that the CHRB widely or routinely discriminated against
females up to a point in time that falls within the applicable
limitations period, i.e. January 1, 2003, and onward.  See Douglas v.
Cal. Dept. of Youth Authority, 271 F.3d 812, 822 (9th Cir. 2001) (the
continuing violation doctrine only "extends the accrual of a claim if
a continuing system of discrimination violates an individual's rights
up to a point in time that falls within the applicable limitations
period").  Therefore, no genuine issue of material facts exists as to
whether a pattern-or-practice of discrimination existed at the CHRB
during the relevant time period.  Consequently, the events that
occurred prior to January 1, 2003, cannot be the basis for Plaintiff's
§ 1983 claims because they are barred by the statute of limitations.[5]

---

[5]    Defendants also argue Plaintiff cannot recover for events
that occurred within the statute of limitations because under Knox,
260 F.3d at 1013, Plaintiff cannot recover for "[s]ubsequent and
repeated denials of the same privilege."  (Defs.' Mot. at 11; Defs.'
Reply at 2-3.)  In Knox, the plaintiff sought relief for events
(continued...)

         B.   Equal Protection

         Defendants seek summary judgment on Plaintiff's § 1983 claim
that she was discriminated against in violation of the Equal
Protection Clause of the Fourteenth Amendment.  (Defs.' Mot. at 8.)
To establish a violation of the Equal Protection Clause, "a plaintiff
must show that the defendants acted with an intent or purpose to
discriminate against the plaintiff based upon membership in a
protected class."  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th
Cir. 2001).

         A plaintiff may establish discriminatory intent through the
burden shifting framework utilized in Title VII disparate treatment
actions.  Keyser v. Sacramento City Unified School Dist., 265 F.3d
741, 754 (9th Cir. 2001) (a plaintiff may establish discriminatory
intent in a § 1983 action through the burden-shifting framework of
Title VII because both claims require a showing of intentional
discrimination).  "In a Title VII disparate treatment case, a
plaintiff must first establish a prima facie case of discrimination.
If the plaintiff establishes a prima facie case, the burden then
shifts to the defendant to articulate a legitimate nondiscriminatory
reason for its employment decision."  Lowe v. City of Monrovia, 775
F.2d 998, 1004-05 (9th Cir. 1986).  If the defendant provides a
legitimate nondiscriminatory reason, the plaintiff must demonstrate

---

       [5](...continued)
outside the limitations period by relying on the continuing violations
doctrine.  260 F.3d at 1009.  The Knox court held that the continuing
violations doctrine was inapplicable because the plaintiff only
suffered a continuing impact from an event that occurred outside the
limitations period.  Id.  Unlike Knox, Plaintiff seeks relief for
events within the statute of limitations that are separate and
distinct from the events outside the statute of limitations.

that the reason "is a pretext for another motive which is discriminatory." Id. at 1005.

"To establish a prima facie case of discrimination in a disparate treatment case, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination." Id. A plaintiff can "establish an inference of discrimination" if (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably. Bergene v. Salt River Project Agric. Improvement and Power Dist., 272 F.3d 1136, 1140 (9th Cir. 2001).

Defendants argue Plaintiff cannot establish she suffered an adverse employment action. (Defs.' Reply at 7.) An adverse employment action is an action which causes the employee to suffer "a tangible job detriment." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 768 (1998). Plaintiff argues she suffered an adverse employment action when the Associate Steward position was suspended in October 2003 because she "was the only Associate Steward affected . . . since the two male Associate Stewards were being provided full Steward assignments." (Pl.'s Opp'n at 26-27.) However, Plaintiff acknowledges Defendants offered her Steward assignments, but that she declined their offer. (PSF ¶¶ 88-91; Berg Decl. ¶ 24.) Therefore, Plaintiff has not demonstrated she was treated differently than other employees when the Associate Position was suspended. "Absent a showing of disparate treatment," Plaintiff cannot establish she suffered an adverse employment action. Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000).

However, Plaintiff also argues she suffered an adverse employment action because she was primarily given assignments as an Associate Steward in 2003 and 2004, rather than assignments as a Steward. (Pl.'s Opp'n at 23-26.)  Defendants counter Plaintiff did not suffer an adverse employment action because she was not entitled to particular assignments. (Defs.' Reply at 8.)  However, even if Plaintiff was not entitled to Steward assignments, if the assignments she did receive were disadvantageous, Plaintiff suffered an adverse employment action.  See Wyatt v. Boston, 35 F.3d 13, 15-16 (1st Cir. 1994) (disadvantageous work assignments constitute adverse employment actions).  Plaintiff argues the Associate Steward assignments were disadvantageous because they were less prestigious and paid less money. (Pl.'s Opp'n at 23-24; Berg Decl. ¶ 8.)  Therefore, a genuine issue of material fact exists as to whether Plaintiff suffered an adverse employment action.

Assuming arguendo that Plaintiff has established the other elements of a prima facie case, Defendants must articulate a legitimate, non-discriminatory reason for the allegedly discriminatory actions.  Lowe, 775 F.2d at 1004-05.  Defendants assert Plaintiff was not given assignments as a Steward because "[t]he existing Stewards were qualified and doing a good job, and there was no reason to displace them." (Defs.' Mot. at 13; Wood Depo. 160:6-163:2.)  Therefore, Defendants have satisfied their burden of articulating a legitimate non-discriminatory reason for the alleged adverse employment action.  See Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25 (1978) (the employer's burden is satisfied if [it] simply "explains what [it] has done").

As a result, the burden shifts to Plaintiff to show that this reason is a pretext for discrimination.  Lowe, 775 F.2d at 1005. A plaintiff may prove pretext with direct evidence, by showing that unlawful discrimination more likely motivated the employer, or with circumstantial evidence, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable.  Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2004).  Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption, while circumstantial evidence is evidence that requires an additional inferential step to demonstrate discrimination.  Coghlan v. American Seafoods Company LLC, 413 F.3d 1090, 1095 (9th Cir. 2005).

Plaintiff argues Defendants' proffered explanation, i.e. that the existing Stewards "were qualified and doing a good job," "smacks of deceit" because Defendants never formally evaluated her own performance.  (Pl.'s Opp'n at 29-30.)  Thus, Plaintiff infers that because her performance was never evaluated, Defendants never evaluated the performance of the other Stewards, and then further infers that if Defendants never evaluated the existing Stewards, they did not know whether they were "doing a good job."  (See id. at 30.)

The fact Plaintiff's work performance was not evaluated is circumstantial evidence of discriminatory intent because it requires additional inferential steps to demonstrate Defendants discriminated against Plaintiff because of gender.  See Coghlan, 413 F.3d at 1095. When a plaintiff offers circumstantial evidence of discriminatory intent, the evidence must be specific and substantial to create a triable issue of fact.  Vasquez, 349 F.3d at 642; Coghlan, 413 F.3d at

1095 ("when the plaintiff relies on circumstantial evidence, that
evidence must be 'specific and substantial' to defeat . . . [a] motion
for summary judgment").  Although Plaintiff's proffered evidence
suggests the other Stewards were not formally evaluated, the evidence
is too attenuated to infer the Defendants had no knowledge of their
work performance.  Therefore, the lack of Plaintiff's evaluation does
not specifically or substantially demonstrate that Defendants'
proffered reason for the alleged adverse employment action is a
pretext for gender discrimination.

        Next, Plaintiff argues Defendant Wood was motivated by
discriminatory intent because he told her "that the [1999 settlement]
would not change how the CHRB would make assignments to her for
Associate Steward and Steward."  (Pl.'s Opp'n at 28.)  Although
Plaintiff argues this statement is direct evidence of discriminatory
animus, the statement constitutes circumstantial evidence because it
requires an additional inferential step to demonstrate that the reason
the assignments would not change was because of Plaintiff's gender.
See Coghlan, 413 F.3d at 1095 ("Direct evidence typically consists of
clearly sexist, racist, or similarly discriminatory statements or
actions by the employer."); Godwin v. Hunt Wesson, Inc., 150 F.3d
1217, 1221 (9th Cir. 1998) (the plaintiff presented direct evidence of
discriminatory intent because her supervisor said he "did not want to
deal with [a] female").  Therefore, the statement must be specific and
substantial evidence of discriminatory intent to establish pretext.
Vasquez, 349 F.3d at 642.

        Plaintiff asserts that "[g]iven the fact that her prior
lawsuit was litigated over discriminatory assignments, the statement,
if the trier of fact believes that it was made, shows sufficient

indicia of animosity as to create triable issues of fact regarding discrimination." (Pl.'s Opp'n at 29.) Although the statement may suggest Defendant Wood harbored some "animosity" toward Plaintiff after the lawsuit settled, the statement does not demonstrate that his animosity was due to Plaintiff's gender. Therefore, the statement does not specifically or substantially demonstrate that Defendants' proffered reason for the alleged adverse employment action is a pretext for gender discrimination.

Plaintiff next argues Defendant Minami harbors "contempt for women in general as he admits to giving a female [employee] an unsolicited kiss on the lips." (Pl.'s Opp'n at 32.) Evidence of "discriminatory animus toward the class to which the plaintiff belongs" may create an inference of discriminatory intent toward the plaintiff. See Coghlan, 413 F.3d at 1095, n.6. However, the act of kissing a female employee does not create a strong inference of discriminatory intent towards women in general or Plaintiff particularly. See Cordova v. State Farm Ins., 124 F.3d 1145, 1149 (9th Cir. 1997) (an "egregious and bigoted insult, one that constitutes strong evidence of discriminatory animus on the basis of national origin . . . could be proof of discrimination" against the plaintiff even though the remarks were directed at another employee). Therefore, the "unsolicited kiss" does not specifically or substantially demonstrate that Defendants' proffered reason for the alleged adverse employment action is a pretext for gender discrimination.

Next, Plaintiff argues she can establish pretext though a statistical analysis of the Steward and Associate Steward assignments in Northern California. (Pl.'s Opp'n at 31.) The statistics reveal

Plaintiff received twenty seven percent Steward assignments in 2003, and seventy two percent Steward assignments in 2004, while five male Stewards received one hundred percent Steward assignments during the same time period.  (Id.; Pl.'s Ex. F.)  Defendants argue these statistics are not accurate because the "tabulations do not account for missed assignments, additional days worked, . . . substitutions, . . . . the Steward position rejected by Plaintiff, and the dark days that Plaintiff refused to work."  (Defs.' Reply at 9.)  Defendants further contend "the statistics fail to incorporate assignments given to those in Southern California, and thus artificially limits those 'similarly situated' to Stewards in Northern California."  (Id.)  Plaintiff rejoins "that the comparable group of similarly situated male Stewards are those who received their assignments in Northern California" because Defendants "accommodated the geographic location of where the Stewards resided . . . when making assignments."  (Pl.'s Opp'n at 20, n.5; PUF ¶ 25.)

        Although statistics "could constitute circumstantial evidence of discrimination demonstrating pretext . . . their utility depends on all of the surrounding facts and circumstances."  Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 663 (9th Cir. 2002) (noting "statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer").  For example, if the "statistical evidence [is] derived from an extremely small universe," the evidence "has little predictive value and must be disregarded."  Id.  Plaintiff's statical evidence, which includes one woman and five men, has little predictive value because of the small sample size.  See id.  Furthermore, "slight changes in the data [might] drastically alter the result" because the statistics do not

account for the Steward assignments Plaintiff was offered, but
rejected, or other "dark days" Plaintiff refused to work.  See id.

Furthermore, the statistics fail to incorporate assignments
given to men and women in Southern California.  "The impact of a
practice on the protected class should generally be measured against
the actual pool of employees affected by that practice." Sengupta v.
Morrison-Knudsen Co., 804 F.2d 1072, 1076 (9th Cir. 1986) (noting that
the plaintiff's "ability to prove discriminatory intent based on
statistical evidence depends upon selecting the proper labor pool").
When all of the assignments for both Northern and Southern California
are combined, no clear pattern of sexual discrimination is apparent.
See Aragon, 292 F.3d at 663 (stating "the statistics must show a stark
pattern of discrimination unexplainable on grounds other than [sex]").
The only other female Steward, Ingrid Fermin, received one hundred
percent Steward assignments during the relevant time period.  (Defs.'s
Reply at 9; Defs.' Ex. C.)  Therefore, the "statistics fall short of
constituting substantial and specific evidence of [sexual]
discrimination."  See Aragon, 292 F.3d at 664.

Finally, Plaintiff argues "the most damaging evidence of
discrimination comes from the current Director of the CHRB, Ingrid
Fermin."  (Pl.'s Opp'n at 32.)  Plaintiff asserts Ingrid Fermin "took
a leave of absence [in 1998] due to the stress she experienced based
upon her own victimization based on gender discrimination."  (Id. at
32.)  Defendants argue Plaintiff "completely misrepresents Ingrid
Fermin's testimony . . . ."  (Defs.' Reply at 10.)

During her deposition, Ingrid Fermin testified she took a
leave of absence, and when asked if her leave was "a result of what
[she] perceived to be disparate treatment," she responded "[i]t was a

combination of things." (Fermin Depo. 33:23-34:11.)  When asked "[w]as one of the factors disparate treatment," she responded "[p]robably," and then stated she "just did not get along with [Defendant Wood] at all."  (Id.)  This testimony does not establish Ingrid Fermin took a leave of absence "based on gender discrimination" as Plaintiff asserts, but rather that one of the reasons she took a leave of absence was because she believed she had "probably" been subjected to discrimination.  Ingrid Fermin's subjective belief as to whether she was discriminated against does not raise a genuine issue of material fact as to pretext.  See Schuler v. Chronicle Broadcasting Co. Inc., 793 F.2d 1010, 1011 (9th Cir. 1986) (stating "subjective personal judgments do not raise a genuine issue of material fact"); Goberman v. Washington County, 2001 WL 34045881, *10 (D. Or. 2001) (stating that the plaintiff's "subjective belief that he has been discriminated against is insufficient to create a genuine issue of material fact").

Therefore, Plaintiff has not demonstrated that the Defendants' proffered reason for the alleged adverse employment actions is a pretext for gender discrimination.  Consequently, Defendants' motion for summary judgment on Plaintiff's § 1983 equal protection claim is granted.

B.   First Amendment

Defendants seek summary judgment on Plaintiff's § 1983 claim that she was retaliated against for engaging in speech protected by the First Amendment.  (Defs.' Mot. at 17.)  To prevail on a First Amendment retaliation claim, Plaintiff must demonstrate that (1) she suffered an adverse employment action, (2) the speech at issue was constitutionally protected, and (3) the speech was a substantial

motivating factor for the adverse employment action.  Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).

Defendants argue Plaintiff cannot show that her previous lawsuit was a substantial motivating factor for an adverse employment action because "plaintiff admits that the actions of defendants after her previous lawsuit was [sic] the same as prior to the lawsuit." (Defs.' Mot. at 18.)  Plaintiff argues the comment by Defendant Wood that the judgment in her previous lawsuit would not affect how the CHRB made assignments "shows sufficient indicia of animosity that the trier of fact could conclude . . . [adverse employment actions were] motivated by an intent to chill her petitioning conduct."  (Pl.'s Opp'n at 43.)

To establish that her speech was a substantial motivating factor for an adverse employment action, Plaintiff must demonstrate a casual nexus between the protected speech and the alleged adverse employment action.  Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).  A plaintiff cannot demonstrate a casual nexus if the same adverse employment actions occurred before and after she engaged in protected speech.  See McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir. 1996) (no causal connection when the alleged retaliatory conduct occurred both before and after plaintiff filed her complaint); Johnson v. Nordstrom, Inc., 260 F.3d 727, 735 (7th Cir. 2001) ("If there was 'no ratcheting up of the harassment' after the complaint was filed, the complaint could not have been the cause of the allegedly retaliatory conduct.").  Plaintiff acknowledges that "the actions of Defendants after her previous lawsuit was [sic] the same as prior to the lawsuit."  (SUF ¶ 24; Ex. A.)  Therefore, the lawsuit could not have been a substantial motivating factor for the adverse employment

actions.  See Johnson, 260 F.3d at 735.  Accordingly, Defendants'
motion for summary judgment on Plaintiff's § 1983 retaliation claim is
granted.

C.   Procedural Due Process

          Defendants seek summary judgment on Plaintiff's § 1983 claim
that she was denied procedural due process under the Fourteenth
Amendment.[6]  (Defs.' Mot. at 8.)  To establish a procedural due process
claim, Plaintiff must demonstrate Defendants (1) deprived her of a
property interest, and (2) did so without due process of law.  Huskey
v. City of San Jose, 204 F.3d 893 (9th Cir. 2000); Thorton v. City of
St. Helens, 425 F.3d 1158, 1164, (9th Cir. 2005).

          Defendants argue Plaintiff does not have a property interest
in specific job assignments, (Defs.' Mot. at 12), while Plaintiff
argues she has a property interest in her Steward license, (Pl.'s
Opp'n at 8).  "To have a property interest in a benefit, a person
clearly must have more than an abstract need or desire for it
. . . [and] more than a unilateral expectation of it . . . [but] must,
instead, have a legitimate claim of entitlement to it."  Board of
Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  An
entitlement is not created by the Constitution, but rather by
"existing rules or understandings that stem from an independent source
such as state law-rules or understandings that secure certain benefits
and that support claims of entitlement to those benefits."  (Id.)

          Defendants argue Plaintiff does not have a property interest
in particular assignments because her annual contracts do not

---

          [6]   Although Defendants argued summary judgment should be
granted on Plaintiff's procedural due process and substantive due
process claims, Plaintiff states she "does not assert a substantive
due process claim."  (Pl.'s Opp'n at 7, n.1.)

guarantee any assignments. (Defs.' Mot. at 12; Defs.' Reply at 4.)
An employment contract that "secure[s] no interest" in a benefit,
creates "no possible claim of entitlement" to that benefit. <u>Roth</u>, 408
U.S. at 577 (holding the plaintiff did not have a property interest in
re-employment because his contract did not guarantee re-employment
after his contract expired). Plaintiff's contracts secured absolutely
no interest in particular assignments because the contracts did not
guarantee any such assignments. (<u>See</u> UF ¶ 10; Defs.' Ex. B.)
Therefore, Plaintiff does not have a property interest in her
assignments.

　　　Plaintiff argues she has a property interest in her Steward
license. (Pl.'s Opp'n at 10.) Although an individual may have a
property interest in a professional license, Plaintiff does not allege
she has been deprived of her license or the ability to engage in her
specific profession. <u>See</u> <u>Gallo v. U.S. Dist. Court For Dist. of</u>
<u>Arizona</u>, 349 F.3d 1169, 1179 (9th Cir. 2003) (plaintiff was deprived
of a property interest when the court revoked his admission to the
court bar); <u>c.f.</u> <u>Dittman v. California</u>, 191 F.3d 1020, 1029 (9th Cir.
1999) (plaintiff was deprived of a liberty interest when a government
regulation created a "complete prohibition" on her entry into a
profession). Rather, Plaintiff argues she was deprived of "the full
benefits of her license" because she was unable to negotiate the terms
of her contracts with Defendants. (Pl.'s Opp'n at 10.)

　　　Plaintiff contends she is entitled to negotiate the terms of
her contracts with Defendants because California Business and
Professions Code § 19518(a)(1) provides that "[c]ontracts shall be
upon any terms that the [CHRB] and stewards may mutually agree
upon . . . ." (<u>Id.</u>) "A property interest may be created if

'procedural' requirements are intended to operate as a significant substantive restriction on the basis for an agency's actions." Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir. 1980).  Therefore, Plaintiff has a property interest in negotiation with Defendants if California Business and Professions Code § 19518(a)(1) imposes "significant limitations on the discretion of the decision maker." Nunez v. City of Los Angeles, 147 F.3d 867, 873 n.8 (9th Cir. 1998) (quoting Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir. 1984)).

California Business and Professions Code § 19518 states that contracts will be formed upon terms the CHRB and Plaintiff "may" mutually agree upon, but does not affirmatively require Defendants to negotiate with Plaintiff or agree to the terms proposed by Plaintiff. Therefore, the permissive language of the statute does not impose "significant limitations on the discretion" of Defendants.  See id. Consequently, Plaintiff does not have a property interest in negotiation because the statute does not create a "legitimate claim of entitlement to it."  See Roth, 408 U.S. at 577.  Therefore, Defendant's motion for summary judgment on Plaintiff's § 1983 procedural due process claim is granted because no genuine issue of material fact exists as to whether Plaintiff was deprived of a property interest.

II.  State Law Claims

Since Defendants' motion for summary judgment has been granted on all of Plaintiff's federal claims, the issue is reached whether supplemental jurisdiction should continued being exercised over Plaintiff's state claims.  Under 28 U.S.C. § 1367(c)(3), when all federal claims are eliminated before trial, the court has a measure of discretion when deciding whether to continue exercising supplemental

jurisdiction over remaining state claims.  Les Shockley Racing, Inc.
v. National Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989).  "[W]hen
deciding whether to exercise supplemental jurisdiction, a federal
court should consider and weigh in each case, . . . the values of
judicial economy, convenience, fairness, and comity."  City of Chicago
v. Int'l College of Surgeons, 522 U.S. 156, 173 (1997).  However,
"[i]n the usual case in which all federal-law claims are eliminated
before trial, the balance of factors to be considered . . . will point
toward declining to exercise jurisdiction over the state-law claims."
Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Wade v.
Regional Credit Assoc., 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a
district court dismisses a federal claim, leaving only state claims
for resolution, it should decline jurisdiction over the state claims
and dismiss them without prejudice.").

     One of Plaintiff's state law claims involves an alleged
violation of the Fair Employment and Housing Act ("FEHA"), California
Government Code 12940 et seq.  Defendants argue Plaintiff cannot
maintain a claim under the FEHA because she is an independent
contractor pursuant to California Business and Professions Code
§ 19518.  (Defs.' Mot. at 19.)  However, "it is not settled that
independent contractors cannot sue under the FEHA" because "[t]he
California Supreme Court has not squarely ruled that independent
contractors do not have standing."  Plute v. Roadway Package System,
Inc., 141 F. Supp. 2d 1005, 1009 (N.D. Cal. 2001).  "Because the
California Supreme Court has not addressed this question, . . . [this
court would have to] 'predict how the highest state court would decide
the issue . . . .'"  Walker v. City of Lakewood, 272 F. 3d 1114, 1125
(9th Cir. 2001) (quoting Nat'l Labor Relations Bd. v. Calkins, 187

F.3d 1080, 1089 (9th Cir. 1999)).  However, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  Therefore, "as a matter of comity" and to provide the parties with "a surer-footed reading of applicable law," the Court declines to continue exercising supplemental jurisdiction over Plaintiff's state claims.  Plaintiff's state law claims are dismissed without prejudice as of the date on which this order is filed.

IT IS SO ORDERED.

Dated:  March 1, 2006

/s/ Garland E. Burrell, Jr.
GARLAND E. BURRELL, JR.
United States District Judge